**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

FRANK J. NIELANDER,

                              Plaintiff,

          v.                                                    Case No. 06-2013-CM-KGS

THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF REPUBLIC, KANSAS,
MARK NORDELL, JOSHUA PEREZ, BETH REED, AND
FRANK SPURNEY in his official capacity
as the REPUBLIC COUNTY ATTORNEY,

                              Defendants.

---

## <u>FIRST AMENDED COMPLAINT</u>

          Plaintiff Frank J. Nielander, for his claims against the  Board of County Commissioners of

the County of Republic, Kansas, Joshua Perez, Beth Reed, Mark Nordell, and Frank Spurney, states

as follows:

### <u>JURISDICTION AND VENUE</u>

          1.        This action arises under the laws of the United States and the State of Kansas,

including but not limited to, 42 U.S.C. § 1983 and Kansas common law.

          2.        The acts and practices alleged below occurred within Republic County, Kansas, and

venue is proper within the District of Kansas.

          3.        Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 42

U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States

Constitution.   Supplemental jurisdiction of this Court is invoked over state law claims pursuant to 28 U.S.C. § 1367.

### PARTIES

4.      Plaintiff  Frank J. Nielander is a resident of the State of Kansas.

5.      Defendant Board of County Commissioners of the County of Republic, Kansas (hereafter BOCC), is the duly elected governing body of Republic County, Kansas.  The BOCC can be served with process by serving Vickie Hall, the County Clerk for Republic County, at the Republic County Courthouse, 1815 M Street in Belleville, Kansas, zip code 66935.

6.      Joshua Perez was, at the times relevant to this Complaint, a Deputy Sheriff in and for Republic County, Kansas.  Deputy Perez may be served personally with process at his place of employment at 1815 M Street in Belleville, Kansas, zip code 66935.

7.      Beth Reed was, at the times relevant to this Complaint, the Solid Waste Secretary in and for Republic County, Kansas.  Reed may be served personally with process at her place of employment at the Republic County Courthouse, 1815 M Street in Belleville, Kansas, zip code 66935.

8.      Mark Nordell was, at the times relevant to this Complaint, the Director of Communications in and for Republic County, Kansas.  Nordell may be served personally with process at his place of employment at the Republic County Courthouse, 1815 M Street in Belleville, Kansas, zip code 66935.

9.      Frank Spurney, Jr. was, at the times relevant to this Complaint, the County Attorney in and for Republic County, Kansas.  Spurney, consistent with this court's ruling (Doc. 20),  is sued in his official capacity. Spurney may be served personally with process at his places of employment

at the Republic County Courthouse, 1815 M Street or 1910 M Street in Belleville, Kansas, zip code 66935.

## **STATEMENT OF FACTS**

10.     Plaintiff Frank Nielander moved to Republic County in 1999 where he built a residence upon a 32 acre tract of land with access from County Road 180.

11.     From and since at least March 2001, plaintiff Nielander has periodically appeared at meetings of the BOCC to address complaints regarding the condition and maintenance of the County Road 180 as well as complaints regarding damage to plaintiff Nielander's vehicles resulting from the poor condition and maintenance of County Road 180.

12.     In or near the month of October 2003, plaintiff Nielander appeared at a meeting of the BOCC.

    a.     During this meeting, Nielander addressed questions about the road and asked how long he was expected to keep replacing tires.

    b.     During this meeting, plaintiff Nielander stated he was going to take his business south, referring to Concordia in a neighboring county, rather than north to Republic County seat Belleville and risk getting flat tires.

    c.     Nielander's statement was intended to impress upon the BOCC that "taking his business south" would cost the county sales tax income.

    d.     Plaintiff Nielander also stated that he was going to check with an attorney about Republic County's responsibility for maintaining the roads.

13.     On or about July 9, 2004, plaintiff Nielander went to the Republic County Courthouse Sanitary Landfill Office to pay the county landfill assessment under protest.

14.     While paying the landfill assessment, Nielander expressed to Reed his displeasure at paying the assessment while incurring significant expense for damages to tires and foglights caused by the poor maintenance of the county road.

15.     Reed acknowledged to Nielander that she knew there was a real problem with that road and that she didn't blame Nielander for being upset.

16.     Nielander's daughter, Krystal Nielander (Krystal), had accompanied Nielander and mentioned to Reed that she had nearly hit a road sign because of the manner in which the road had been graded.

17.     Mark Nordell entered the Landfill Office at the time Krystal was mentioning the condition of the road and asked what the complaint was.  Krystal repeated her comments to Nordell.

18.     After Krystal repeated her comments to Nordell, plaintiff Nielander again spoke to Reed and said that she might mention to County Commissioner Wilbur that Nielander would not make another landfill assessment payment until Nielander had consulted with an attorney or the road is restored back to the way it was before the county had torn it up.

19.     Nordell told Neilander that Nielander needed to go to the BOCC meetings and air his problems to them and not to others in the Courthouse.  Nielander replied saying, *inter alia*:

   a.     he was not going to any more commissioner meetings as the issue had fallen on deaf ears;

   b.     that County Commissioner Nelson was a complete idiot;

   c.     that County Commissioner Linda Holl was like a coat rack, just stand her in the corner and she will do nothing except sit there;

   d.     that County Commissioner Harold Wilber had good ideas, but would never get them approved as long as the other commissioners remained; and

e.      that Highway Administrator Alvin Perez was a poor excuse for a Road Superintendant and that Nielander would seriously question Perez' qualifications.

20.      While addressing Nordell's suggestion that Nielander again address his concerns to the County Commission, Nielander stated:  "I will never come to another commissioners meeting for fear that I might want to bring along a gun."

21.      Nordell stated to Nielander:  "you will pay the charge for the landfill or they will come to your house and get it."  In response to this statement, Nielander said:  "then they will have another Ruby Ridge."

22.      Nordell said:  "you better watch what you say, you can get into a lot of trouble talking like that."  Nielander replied, saying:  "I was not threatening anybody."

23.      Reed understood that Nielander was not mad or upset with her.

24.      Reed did not understand any reference to Ruby Ridge to be threatening to her.

25.      Nielander asked Reed:  "Have I been yelling at or getting on you."  Read answered: "No."

26.      Nielander told Reed to have a nice day and left the Courthouse with Krystal at approximately 4:40 p.m.

27.      Nielander's statements, tone of voice, and conduct while in the Landfill Office did not cause Reed to fear for herself.

28.      Emergency Preparedness Director Raymond Raney was also present within the office while Nielander was present.  Raney was seated behind a partition divider approximately six feet in height with the partition approximately 4 feet from where Reed had been standing.

29.      Nielander's statements, tone of voice, and conduct did not cause Raymond Raney to investigate what was going on.

30.    After Nielander departed, Raney, Nordell and Reed sat and discussed Nielander's visit.

31.    After Raney, Nordell and Reed sat and discussed Nielander's visit, Nordell went to his office and called the sheriff's office.

32.    Reed left work on July 9, 2004, at 5:00 p.m.

33.    Before leaving work, Reed did not call any law enforcement officer or agency, did not request assistance by anyone, and walked to her vehicle alone and without fear.

34.    July 9, 2004, was a Friday.

35.    The BOCC met on Monday, July 12, 2004.

36.    Spurney attended the July 12, 2004, meeting of the BOCC.

37.    Sheriff's Deputy Joshua Perez (Deputy Perez) is the son of Highway Administrator Alvin Perez.

38.    Deputy Perez spoke with Nordell and Reed, then requested that Reed and Nordell prepare statements.

39.    Deputy Perez prepared an affidavit entitled "Probable Cause Determination and Order to Appear" which Perez executed on or about July 14, 2004.  Perez' affidavit avered:

    a.    Reed said that Nielander said "the next time he comes back he is going to bring a gun and promised there would be another Ruby Ridge."

    b.    Nordell said that Nielander had stated "the next time he came in he would bring a gun" and "this was the last time he was paying the tax and when they come to collect there will be another Ruby Ridge."; and

c.      "Your Affiant also believes that . . . Nielander became very loud and very angry.
Franklin J. Nielander's angry attitude alarmed and disturbed others in the Emergency
Preparedness office."

40.     Reed prepared a typewritten statement dated July 9, 2004, using a computer.

a.      The computer file for Reed's statement was originally created July 9, 2004 at 2:35
p.m.

b.      The computer file which comprises Reed's statement was created approximately one
hour before Nielander's visit to the Landfill Office.

c.      An inspection of the computer file demonstrated the computer file for Reed's
statement was modified five times with a total editing time of 40 minutes.

d.      The computer file reflects that Reed's statement was printed at 11:05 a.m. on  July
13, 2004, and was last modified at 12:11 p.m. the same date.

e.      Reed's statement was prepared at the request of Deputy Joshua Perez.

41.     Mark Nordell prepared an undated typewritten statement using a computer.

a.      The computer file for Nordell's statement was not created until 11:59 a.m. on July
13, 2004, four days after the conversation between Nielander, Reed and Nordell.

b.      The computer file for Nordell's statement was created on the computer which was
connected to the State of Kansas Criminal Justice Information System.

42.     On or about July 19, 2004, defendant Spurney met with the BOCC and discussed with
the BOCC the fact that Spurney was filing criminal charges against plaintiff Nielander for the stated
reason that Nielander had "verbally threatened the Board of County Commissioners."

43.     On or about July 21, 2004, Nielander was served with a two-count
Complaint/Information captioned *State of Kansas v. Franklin J. Nielander*, Case No. 04-CR-37,

charging Nielander with the crimes of criminal threat (K.S.A. 21-3419, a severity level 9 person

felony) and disorderly conduct (K.S.A. 21-4101(c), a class C misdemeanor).

44.     The Complaint/Information was signed and verified by defendant Spurney on July

20, 2004, and filed with the Republic County District Court on July 21, 2004.

45.     In the Complaint/Information, Spurney averred that Nielander had communicated "a

threat to commit violence against: Republic County Commissioners and Republic County Highway

Administrator with intent to terrorize another, to-wit:  Beth Reed."

46.     K.S.A. 21-3419 defines criminal threat as follows:

(a)     A criminal threat is any threat to:
(1)     Commit violence communicated with intent to terrorize another, or to cause
        the evacuation of any building, place of assembly or facility of transportation,
        or in reckless disregard of the risk of causing such terror or evacuation;
(2)     adulterate or contaminate any food, raw agricultural commodity, beverage,
        drug, animal feed, plant or public water supply; or
(3)     expose any animal in this state to any contagious or infectious disease.
(b)     A criminal threat is a severity level 9, person felony.

47.     K.S.A. 21-4101(c) defines disorderly conduct to include: "Using offensive, obscene,

or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or

resentment in others. "

48.     Defendant Spurney attempted plea negotiations with Nielander which would have

required that Nielander plead guilty to disorderly conduct, attend an anger management counseling

program and apologize to the witnesses.

49.     A preliminary hearing was conducted in Case No. 04-CR-37 on or about September

8, 2004.  Beth Reed and Mark Nordell were the only witnesses called to testify.

50.     Reed testified that she did not take any of Nielander's comments personally.

T0346840.WPD

51.     Nordell testified at the preliminary hearing, falsely, that he created his typewritten statement two to three hours after the events of July 9, 2004, when the statement was, in fact, created some four days later on July 13, 2004.

52.     A comparison of the computer files for Nordell and Reed's statements reflect that Reed's statement was being printed and modified at or near the same time that Nordell's statement was being created, prepared and modified.

53.     Nordell testified at the preliminary hearing that he does not recall the specific words spoken by Nielander.

54.     Nordell testified at the preliminary hearing that Nielander had specifically addressed Reed and said that he was not threatening her, that his statements were not directed at her.

55.     Nordell testified at the preliminary hearing that he did not remember what Ruby Ridge was when Nielander mentioned it, only that it was a bad situation.

56.     Nordell testified at the preliminary hearing that he understood from Nielander's statements that he wasn't going to pay that tax again, and he wasn't going to come to any commission meeting again because "they hadn't worked in the past."

57.     On or about January 13, 2005, Kansas District Judge Thomas M. Tuggle issued an Order concluding that the words alleged by Spurney, Reed, Nordell and Deputy Perez to have been spoken by Nielander failed to support a finding of probable cause that the crime of criminal threat had been committed and, for that reason, the Complaint must be dismissed.  A true and correct copy of Judge Tuggle's Order is attached hereto as Appendix A.

58.     On or about January 17, 2005, Spurney met with the BOCC and advised the BOCC the "case that had been filed in District Court against Frank Nielander has been dismissed by the District Judge."

59.     On or about January 24, 2005, District Magistrate Judge John Eyer entered an Order of Dismissal in Case No. 04-CR-37, which dismissed the remaining count of disorderly conduct. A true and correct copy of Magistrate Eyer's Order of Dismissal is attached hereto as Appendix B.

60.     Frank Spurney, Jr., as the County Attorney for Republic County, has final decision-making authority to prosecute in state district court.

61.     Nielander's statements set forth above were speech protected by the First Amendment to the United States Constitution.

62.     As a result of the initiation and continuation of Case No. 04-CR-37, plaintiff Nielander was required to retain and pay an attorney in excess of $6,000.00 to defend himself against the criminal charges.

63.     As a result of the initiation and continuation of Case No. 04-CR-37, plaintiff Nielander has suffered a loss of earnings and earning potential.

64.     As a result of the initiation and continuation of Case No. 04-CR-27, plaintiff Nielander suffered noneconomic loss, including severe emotional distress, humiliation, and embarrassment.

## CAUSES OF ACTION

### COUNT I – MALICIOUS PROSECUTION
**42 U.S.C. § 1983 and Kansas Law**

65.     The foregoing paragraphs of this complaint are incorporated here by reference.

66.     Defendants Perez, Reed, Nordell and Spurney initiated, procured, caused, and continued Case No. 04-CR-37 without probable cause, and with malice.

67.     Defendants Perez and Spurney acted under color of state law.

68.     Defendant Spurney initiated, procured, caused, and continued Case No. 04-CR27 in bad faith and maliciously to punish plaintiff for exercising his constitutional right to free speech and to petition for redress of grievances.

69.     Case No. 04-CR-37 terminated in favor of plaintiff Nielander, with charges dismissed.  The time for an appeal from such dismissal has expired.

70.     The actions of defendants as described in this complaint constitute a deprivation of plaintiff's rights, including, but not limited to:

    a.      plaintiff's rights pursuant to the First and Fourteenth Amendments of the Constitution of the United States to free speech and to petition for redress of grievances;

    b.      plaintiff's right to be free from malicious prosecution as provided for by the Fourth and Fourteenth Amendments to the Constitution of the United States;

    c.      plaintiff's right to due process of law as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States;

    d.      plaintiff's rights pursuant to the §§ 3 and 11 of the Bill of Rights of the Constitution of the State of Kansas to free speech and to petition for redress of grievances; and

    e.      plaintiff's right to be free of malicious prosecution under the law of the State of Kansas.

71.     The rights identified in the preceding paragraphs were clearly established as of July 9, 2004.

72.     Defendants Reed and Nordell were willful participants in said malicious prosecution, and acted in concert with defendants Spurney and Deputy Perez, and were acting under color of state law during such participation.

73.     Defendant BOCC is liable under 42 U.S.C. § 1983 as Case No. 04-CR-37 was initiated, procured, caused, and continued by defendant Spurney who possesses final decision-making authority as to criminal prosecutions within Republic County.

74.     Defendant BOCC is liable for damages to plaintiff Nielander pursuant to K.S.A. 75-6103 for the wrongful acts and omissions of its employees Spurney, Deputy Perez, Reed and Nordell (as defined by K.S.A. 75-6102).

75.     As a direct and proximate result of defendants' conduct, plaintiff sustained damages, including severe emotional distress, humiliation, and embarrassment, incurring attorney fees, court costs, and loss of earnings.

WHEREFORE, based upon the above and foregoing, plaintiffs pray that they have judgment against the defendants for damages in excess of $75,000.00, prejudgment interest, compensatory damages, costs of this action, attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988, punitive damages (against the individual defendants only), and such other and further relief as the Court may deem just and equitable.

### COUNT II – PROSECUTION IN RETALIATION FOR EXERCISE OF FREE SPEECH
### 42 U.S.C. § 1983 and Kansas Law

76.     The foregoing paragraphs of this complaint are incorporated here by reference.

77.     Plaintiff, Frank J. Nielander, engaged in constitutionally protected activity by engaging in speech on a matter of public concern which was critical of elected officials and employees of Republic County responsible for the maintenance of county roads.

78.     The conduct of defendants described in the foregoing allegations caused plaintiff, Frank J. Nielander, to suffer an injury that would chill a person of ordinary firmness from continuing to engage in such protected activity.

79.     The conduct of defendants was substantially motivated as a response to the plaintiff's exercise of constitutionally protected speech.

80.     The prosecution of plaintiff Nielander was initiated, procured, caused, continued and carried out by the Defendants in substantial part in retaliation for the exercise or the attempted exercise of:

    a.      the right to speech, in violation of the First and Fourteenth Amendments of the Constitution of the United States;

    b.      the right to petition for redress of grievances, in violation of the First and Fourteenth Amendments of the Constitution of the United States; and

    c.      plaintiff's rights pursuant to the §§ 3 and 11 of the Bill of Rights of the Constitution of the State of Kansas to free speech and to petition for redress of grievances.

81.     The rights identified in the preceding paragraphs were clearly established as of July 9, 2004.

82.     Defendants Perez and Spurney acted under color of state law.

83.     Defendants Reed and Nordell were willful participants in said retaliatory prosecution, and acted in concert with defendants Spurney and Deputy Perez, and were acting under color of state law during such participation.

84.     Defendant BOCC is liable under 42 U.S.C. § 1983 as Case No. 04-CR-37 was initiated, procured, caused, and continued by defendant Spurney who possesses final decision-making authority as to criminal prosecutions within Republic County.

85.     Defendant BOCC is liable for damages to plaintiff Nielander pursuant to K.S.A. 75-6103 for the wrongful acts and omissions of its employees Spurney, Deputy Perez, Reed and Nordell (as defined by K.S.A. 75-6102).

86.     As a direct and proximate result of defendants' conduct, plaintiff sustained damages, including severe emotional distress, humiliation, and embarrassment, incurring attorney fees, court costs, and loss of earnings.

WHEREFORE, based upon the above and foregoing, plaintiffs pray that they have judgment against the defendants for damages in excess of $75,000.00, prejudgment interest, compensatory damages, costs of this action, attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988, punitive damages (against the individual defendants only), and such other and further relief as the Court may deem just and equitable.

### COUNT III – CONSPIRACY
### 42 U.S.C. § 1983 and Kansas Law

87.     The foregoing paragraphs of this complaint are incorporated here by reference.

88.     Defendants BOCC, Spurney, Deputy Perez, Nordell and Reed conspired to maliciously prosecute Nielander and to prosecute Nielander in retaliation for his exercise of protected political speech.

89.     Defendants took action in furtherance of said conspiracy including, but not limited to the following acts:

a.      Defendant Perez prepared a probable cause affidavit averring Nielander had committed the crime of criminal threat;

b.      Defendant Reed prepared a witness statement which failed to accurately set forth Nielander's statements;

c.      Defendant Nordell prepared a witness statement which failed to accurately set forth Nielander's statements;

d.      Defendants Perez, Nordell and Reed met and discussed events before preparing their respective statements or probable cause affidavit;

e.      Defendant Spurney met with the BOCC before preparing and signing the criminal Complaint/Information;

f.      Defendants Reed and Nordell created and/or modified their respective statements with one hour of each other on July 13, 2004;

g.      Defendant Spurney signed and verified the Complaint/Information which did not properly charge a crime;

h.      Defendants Reed and Nordell testified at the preliminary hearing and failed to accurately set forth Nielander's statements;

i.      Defendants Reed and Nordell falsely testified at the preliminary hearing about when and how their respective statements were prepared;

j.      Defendant Spurney attempted to negotiate a plea with Nielander.

90.     Defendants Reed and Nordell were willful participants in said conspiracy, and acted in concert with defendants Spurney and Deputy Perez, and were acting under color of state law during such participation.

91.     Defendant BOCC is liable for damages to plaintiff Nielander pursuant to K.S.A. 75-6103 for the wrongful acts and omissions of its employees Spurney, Deputy Perez, Reed and Nordell (as defined by K.S.A. 75-6102).

92.     As a direct and proximate result of defendants' conduct, plaintiff sustained damages, including severe emotional distress, humiliation, and embarrassment, incurring attorney fees, court costs, and loss of earnings.

93.     Plaintiff has substantially complied with the condition precedent of a notice required by K.S.A. 12-105b.  Said notice is deemed denied by passage of time and operation of statute.

94.     Pursuant to a tolling agreement between the parties, this amended complaint is withing the applicable statute of limitations.

WHEREFORE, based upon the above and foregoing, plaintiffs pray that they have judgment against the defendants for damages in excess of $75,000.00, prejudgment interest, compensatory damages, costs of this action, attorney fees and litigation expenses pursuant to 42 U.S.C. § 1988, punitive damages (against the individual defendants only), and such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all claims.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
3550 S.W. 5th Street
P. O. Box 949
Topeka, Kansas 66601-0949          (785) 232-7761


**s/ David R. Cooper**
David R. Cooper                                          #16690
E-Mail:  dcooper@fisherpatterson.com
Teresa L. Sittenauer                                     #16654
E-Mail:  tsittenauer@fisherpatterson.com
**Attorneys for Plaintiff**