kaw

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **FRANK J. NIELANDER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **BOARD OF COUNTY** ) | **Case No. 06-2013-JAR** |
| **COMMISSIONERS OF THE COUNTY** ) | |
| **OF REPUBLIC, KANSAS, MARK** ) | |
| **NORDELL, JOSHUA PEREZ, BETH** ) | |
| **REED, AND FRANK SPURNEY AS** ) | |
| **REPUBLIC COUNTY ATTORNEY,** ) | |
| ) | |
| **Defendants,** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff Frank J. Nielander filed this action claiming that defendants the Board of County

Commissioners of Republic County, Kansas; Mark Nordell, the Director of Communications;

Joshua Perez, the Deputy Sheriff; Beth Reed, the Solid Waste Secretary; and Frank Spurney,

Republic County Attorney, in their individual and official capacities instituted a criminal

prosecution against him for charges that were subsequently dismissed.  Plaintiff alleged: (1)

malicious prosecution under 42 U.S.C. § 1983 and Kansas state law; (2) prosecution in

retaliation for exercising his First Amendment right under 42 U.S.C. § 1983; municipal liability;

and (3) conspiracy to do both under 42 U.S.C. § 1983 and Kansas state law.

**I.    Background**

Plaintiff moved to Republic County in 1999 and built a house just off County Road 180.

In 2001, county garbage trucks began to use the road to get to the landfill.  Soon, plaintiff began

to experience damage to his vehicles because the road was filled with debris, including nails,

trash, iron, wood, and other items that either fell off the county trucks or were placed there by other residents.  Plaintiff began to attend County Commission meetings to plead his case in hopes of having the county clean the debris off the road.  The road remained dilapidated even after plaintiff's several attempts to get the county to act.

On July 9, 2004, at approximately 3:30 p.m. plaintiff and his daughter entered the landfill office to pay his landfill fees.  After checking the commissioners' room, plaintiff turned to Beth Reed to pay the fee.  Reed's desk is stationed in front of the Board of County Commissioners ("BOCC") chambers surrounded on both sides by a counter.  Reed sits between the wall and her desk.  There is an office divider that separates Reed's desk and Raney's desk.  The area behind Reed's desk is very small, just enough for her to turn around.

After writing the check, plaintiff told Reed that the road leading to his home was unacceptable and filled with debris.  Reed responded, stating that she was aware of the problem on the road.  While discussing the road with Ms. Reed, Mark Nordell approached and asked what road plaintiff was speaking of.  Plaintiff's daughter responded by telling Nordell that Road 180 was in disarray, and as a result caused damage to plaintiff's vehicles.  Nordell then told plaintiff that he would need to attend a commissioners' meeting to air his concerns.  Plaintiff explained that he would not attend another commissioners' meeting, and Nordell told him that he should not air his complaints to Reed.  After talking to Nordell, plaintiff presented Reed with the check and explained that he would not pay the landfill fee anymore until the county did something about the road or until plaintiff spoke with his attorney.

After hearing plaintiff speak in a "loud, firm voice, or a raised voice," Nordell, again invited plaintiff to attend the commissioners' meeting to speak about his concerns.  Plaintiff said

that he would not attend another commissioners' meeting because his complaints fell on deaf ears.  He proceeded to call one of the commissioners a "complete idiot," referred to another as being "about as useless as a coat rack," and regarding the superintendent, Alvin Perez, wondered how Republic County "found him."  Again, Nordell stated, more affirmatively, that plaintiff needed to attend the commissioners' meeting instead of airing his complaints in the landfill office.  Plaintiff responded that he would not attend another commissioners's meeting "because I'd be too afraid that I'd bring along a gun."  In response to Nordell's comment that the county would come and get the tax if plaintiff did not pay, plaintiff stated, "then they'll have another Ruby Ridge."

After plaintiff left the landfill office, Nordell continued to Raney's office.  When Nordell left Raney's office, he called the sheriff's office.  The resulting investigation is controverted.  Defendants claim that Nordell told sheriff Blad that he thought that plaintiff had made a threat.  Sheriff Blad then contacted Deputy Sheriff Joshua Perez and asked him to take the statements of Reed and Nordell, which he did.  Reed was unaware that Nordell had contacted the sheriff's office.

Plaintiff claims that Nordell contacted Deputy Sheriff Perez because he thought Deputy Sheriff Perez needed to know what had happened.  Deputy Sheriff Perez then initiated contact with Reed and Nordell and obtained an untruthful rendition of the facts.  Plaintiff claims that Reed's testimony is false because of the computer records found which seem to suggest that her report of the facts was created before plaintiff entered the office that day.  Nordell's statement is false because Nordell told Deputy Sheriff Perez that plaintiff unequivocally stated that he would bring a gun to the commissioner's meeting.

After collecting their statements, Deputy Sheriff Perez created his own affidavit for County Attorney Spurney.  In his affidavit, Deputy Sheriff Perez neglected to reference the insults that plaintiff hurled against the commissioners and against his father, Alvin Perez. Spurney used the information to draft charges and met with the BOCC to tell them that he intended to bring charges against plaintiff.  On July 21, 2004, Spurney filed a two-count complaint against plaintiff, charging him with threatening the BOCC and Alvin Perez, and with disorderly conduct.  Subsequently, Spurney amended the charging papers, dropping the charge for threatening Alvin Perez.

Plaintiff was served with summons requiring him to appear in court on July 23, 2004.  At the initial hearing on September 8, 2004, the magistrate judge found that there was probable cause to bring the charges against him.  On January 13, 2005, at the preliminary hearing, the district judge determined that there was no probable cause and granted plaintiff's motion to dismiss.  On January 14, 2005, Spurney filed a motion to dismiss the remaining charges against plaintiff.

While the charges were pending, plaintiff traveled to Texas for a job interview.  He was offered a job with a Texas company on October 11, 2004.  During that time, his Motion to Dismiss was pending, but was not ruled on until January.  Plaintiff did not move to Texas because his case was still pending.  There is an affidavit by the Texas employer stating that it offered plaintiff the job on October 11, 2004, and that plaintiff did not accept the job on October 14, 2004.

After the case was dismissed, plaintiff then brought this action claiming malicious prosecution, retaliation in violation of his First Amendment right, conspiracy, municipal liability,

4

and state law actions for malicious prosecution.

Defendants filed a Motion for Summary Judgment (Doc. 59).  The Court held a hearing on March 14, 2008, where it granted judgment in favor of defendants on plaintiff's § 1983 malicious prosecution claim because plaintiff failed to show a Fourth Amendment violation, in that plaintiff was not arrested nor otherwise "seized" as contemplated by the Fourth Amendment. The Court also granted summary judgment on plaintiff's § 1983 First Amendment claim because plaintiff failed to show that he was engaged in constitutionally protected activity and that defendants' adverse action was substantially motivated by plaintiff's exercise of constitutionally protected activity.  Consequently, the Court also concluded that plaintiff's § 1983 conspiracy and municipal liability claims failed because there was no constitutional violation.  The Court further held that Reed was entitled to absolute witness immunity and discretionary immunity under Kansas law, and that Perez was entitled to qualified immunity and law enforcement immunity under Kansas law.  After the hearing, the Court took under advisement the remaining claims, which are state law malicious prosecution and conspiracy to do so under state law.  After thoroughly reviewing the record, and in light of the Court having ruled on all of the federal claims, the Court exercises its discretion and now declines supplemental jurisdiction over the remaining state law claims.  Accordingly, the action is dismissed.

## II.    Discussion

A federal court "may decline to exercise supplemental jurisdiction over" state law claims where it has "dismissed all claims over which it has original jurisdiction."[1]  Where the federal

_____

[1] 28 U.S.C. § 1367(c)(3).

claims are dismissed, a court may dismiss the state law claims as well.[2]  But before doing so, a district court should first consider the factors of convenience, judicial economy, fairness, and comity.[3]  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."[4]  Balancing these four factors, this Court concludes that the state law claims should be dismissed so that plaintiff may continue his action in state court.[5]

Notwithstanding that the Court is declining supplemental jurisdiction, the Court will briefly discuss the remaining claims argued at the hearing.  In Kansas, a plaintiff bringing a malicious prosecution claim must prove: "(1) the defendant initiated, continued, or procured the proceeding of which the complaint is made; (2) the defendant in so doing acted without probable cause; (3) the defendant acted with malice; (4) the proceedings terminated in favor of plaintiff;

---

[2]*Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966)).

[3]*Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 803 (10th Cir. 1991) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

[4]*McWilliams v. Jefferson County*, 463 F.3d 1113, 1118 (10th Cir. 2006) (citing *Cohil*, 484 U.S. 343, 350 n.7 (1988)).

[5]*See Jones v. Intermountain Power Project*, 794 F.2d 546, 549 (10th Cir. 1986) (explaining that pendent state claims should be dismissed when all federal claims are dismissed before trial). The Court also notes that K.S.A. § 60-518, Kansas's saving statute provides:

> If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if the plaintiff die, and the cause of action survive, his or her representatives may commence a new action within six (6) months after such failure.

The saving statute affords a plaintiff six months to commence a new action if a previous timely action failed "otherwise than upon the merits."  Examples of such failures include a dismissal without prejudice.  *See Rogers v. William, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 839 (Kan. 1989).  If the Kansas saving statute is applicable, the time frame provided therein controls over the 30-day period provided in 28 U.S.C. § 1367(d).

and (5) plaintiff sustained damages."[6]

At the hearing, plaintiff presented no evidence of malice. Fortunately for plaintiff, in Kansas, malice may be inferred from the lack of probable cause.[7] In this case, the record reveals that probable cause was a close call. The magistrate judge found probable cause at the initial hearing while the district court judge found no probable cause at the preliminary hearing. Plaintiff also contends that because Spurney amended the charging papers before any judicial determination to eliminate an allegation that plaintiff threatened Alvin Perez, there is an inference of malice.

Plaintiff's conspiracy claim is based on few facts and inferences. To prove conspiracy under Kansas law, plaintiff must allege and come forward with supporting evidence that two or more persons sought to accomplish an unlawful goal through overt acts, which proximately caused plaintiff damage.[8] Plaintiff must show that there was a meeting of the minds,[9] and the commission of some underlying tort.[10] A meeting of the minds may be inferred from circumstantial evidence.[11] Evidence that the alleged conspirators took part in actions that are unlikely to have been taken without an agreement is circumstantial evidence to show a meeting

---

[6]*Good v. Bd. County Comm'rs of County of Shawnee, Kan.*, 331 F. Supp. 2d 1315, 1328 (D. Kan. 2004) (citing *Lindenman v. Umscheid*, 875 P.2d 964, 974 (Kan. 1994)).

[7]*Thompson v. Gen. Fin., Co.*, 468 P.2d 269, 286 (Kan. 1970) (explaining that want of probable cause on an issue is evidence of malice); *Evello Inv., N.V., Inc. v. Printed Media Servs., Inc.*, Civ. A. No. 94-2254-EEO, 1995 WL 409021, at *6 (D. Kan. June 30, 1995).

[8]*Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1032, 1074 (D. Kan. 2006).

[9]*Id.*

[10]*Id.*

[11]*Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).

of the minds.[12]  Generally, whether there is a conspiracy is a factual issue left for the jury's

determination.[13]  However, the proponent must come forth with enough evidence for the jury to

infer that there was a meeting of the minds.[14]  Notably, parallel behavior is not enough to show a

conspiracy, the actions must be coupled with more circumstantial evidence .[15]

Plaintiff insists that there is evidence of a conspiracy because Reed drafted her statement

four days before Nordell and at the time that Nordell drafted his statement, Reed modified her

statement so that it would conform with Nordell's.  This alone would not be enough evidence.

But plaintiff also contends that Nordell contacted Deputy Sheriff Perez, providing a statement

that was different from plaintiff's account, that Deputy Sheriff Perez then wrote an affidavit

which did not mention the insults hurled at his father, and finally, that Spurney met with the

BOCC and filed charges against plaintiff for threatening the BOCC and Deputy Sheriff Perez's

father despite the fact that plaintiff did not threaten Alvin Perez.  Though the evidence presented

on the state law issues appears thin, there are disputed facts, and the Court finds that in the

interests of judicial economy and comity, it should decline supplemental jurisdiction and leave

the evaluation of the evidence to the state courts.

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment

(Doc. 59) is **GRANTED** as to all federal claims.

**IT IS FURTHER ORDERED** that plaintiff's remaining state law claims are dismissed

---

[12]*Id.*

[13]*Id.*

[14]*Id.*

[15]*Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n. of Kan.*, 891 F.2d 1473, 1481 (10th Cir. 1989).

without prejudice.

**IT IS SO ORDERED.**

Dated this 27th day of March 2008.

_S/ Julie A. Robinson_____
**Julie A. Robinson**
**United States District Judge**